UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CESAR RAMOS, ASHLEY SHAMS, DONNY SMITH, and BRANDY TAYLOR,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>CONNS' INC.<br><br>　　　　　　Defendant. | Case No. 4:16-cv-1186<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CESAR RAMOS, ASHLEY SHAMS, DONNY SMITH, and BRANDY TAYLOR ("Plaintiffs") bring this action against Defendant CONNS' INC. ("Defendant") to stop Defendant's practice of making illegal debt collection calls to the telephones of Plaintiffs, and to obtain redress for injuries caused by Defendant's conduct.  Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

1.　　Defendant operates a chain of furniture and appliance stores.  Defendant engages in reckless and aggressive debt collection practices which outright ignore the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and the rights of the called parties.

2.　　Defendant's calls violated the TCPA because Defendant made one or more unauthorized calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") to the wrong party.  Defendant also called all Plaintiffs after they clearly stated they did

1

not wish to be called again. Defendant should have placed Plaintiffs' names on its federally-mandated Internal Do-Not-Call List, but clearly failed to do so.

3. The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seek an award of statutory damages under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees,[1] and treble damages (for knowing and/or willful violations).

4. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

## PARTIES

5. Plaintiff CESAR RAMOS is a natural person and citizen of Pasadena, Texas.

6. Plaintiff ASHLEY SHAMS is a natural person and citizen of Dallas, Texas.

7. Plaintiff DONNY SMITH is a natural person and citizen of Houston, Texas.

8. Plaintiff BRANDY TAYLOR is a natural person and citizen of Dallas, Texas.

9. Defendant CONNS' INC. is a corporation under the laws of the State of Delaware. Defendant maintains its principal office at The Woodlands, Texas, and may be served with process by serving its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

10. Whenever in this complaint it is alleged that Defendant committed any act or

---

[1] The TCPA does not expressly authorize recovery of attorneys' fees. However, a party may be entitled to attorneys' fees as equitable relief. *Summit Valley Indus. v. Local 112, United Bhd. of Carpenters & Joiners*, 456 U.S. 717 (1982). Accordingly, Plaintiffs intend to seek attorneys' fees in equity if they prevail on the merits at trial.

omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12. The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Furthermore, the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

## LEGAL BASIS FOR THE CLAIMS

13. Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules to prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing,

consent must be in writing.[2]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

14.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is nearly any dialing system, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

15. The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

16. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

17. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC

5

Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

18. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## FACTS SPECIFIC TO PLAINTIFF CESAR RAMOS

19. Beginning around March 2016, Ramos began to receive calls from the number 800-253-7050, which is associated with Defendant. At the time Ramos filed this lawsuit, he had received at least 32 calls from Defendant, sometimes multiple calls in a single day.

20. Ramos received all calls described above on his cellular telephone assigned a number ending in 9717.

21. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Ramos' prior express written consent.

22. Ramos answered several of these calls and interacted with the caller's live representative after being transferred by the dialing system.

23. When Ramos answered the calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.

24. Defendant's representatives always asked for another individual (female), not Ramos.

25. Ramos repeatedly told Defendant that they had the wrong party. Yet, Defendant continued to call.

26. Ramos never provided Defendant consent to call him for any purpose.

6

27. At the time of the calls, Ramos did not have a business relationship with Defendant.

28. Ramos felt the calls were an invasion of privacy and wanted Defendant to stop calling. Defendant ignored Ramos' multiple requests and continued to call him.

29. Based on the circumstances of the calls (e.g. dead air, large volume of calls, repeated calls after protest), Ramos believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

30. On information and belief, Defendant's ATDS called Ramos on every occasion.

31. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

32. Ramos is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 9717.

33. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

34. Ramos did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

35. All calls Defendant made to Ramos violate 47 U.S.C. § 227(b)(1).

### FACTS SPECIFIC TO PLAINTIFF ASHLEY SHAMS

36. Beginning around January 2016, Shams began to receive calls from the numbers 972-755-1060 and 800-511-5750, which are associated with Defendant. Since that time, Shams has received at least 9 calls from Defendant.

37. Shams received all calls described above on her cellular telephone assigned a number ending in 5619.

38. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Shams's prior express written consent.

39. When Shams answered the calls, there was "silence first" before Defendant's live representative engaged on the other end of the line.

40. Defendant's representatives always asked for "Tyree," which is not a name Shams has ever used.

41. Shams repeatedly told Defendant that they had the wrong party. Yet, Defendant continued to call.

42. Shams never provided Defendant consent to call her for any purpose.

43. At the time of the calls, Shams did not have a business relationship with Defendant.

44. Shams felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Shams's multiple requests and continued to call her.

45. Based on the circumstances of the calls (e.g. dead air, large volume of calls), Shams believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

46. On information and belief, Defendant's ATDS called Shams on every occasion.

47. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

48. Shams is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 5619.

49. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

50. Shams did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

51. All calls Defendant made to Shams violate 47 U.S.C. § 227(b)(1).

## FACTS SPECIFIC TO PLAINTIFF DONNY SMITH

52. Beginning around October 2015, Smith began to receive calls from various numbers from area codes 713, 281, 800, and 832. There numbers are associated with Defendant. Since that time, Smith has received at least 19 calls from Defendant.

53. Smith received all calls described above on her cellular telephone assigned a number ending in 0089.

54. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Smith's prior express written consent.

55. When Smith answered the calls, there was silence before Defendant's live representative engaged on the other end of the line.

56. Defendant's representatives always asked for his fiancée by name.

57. Smith repeatedly told Defendant that they had the wrong party. Yet, Defendant continued to call.

58. Smith never provided Defendant consent to call him for any purpose.

59. At the time of the calls, Smith did not have a business relationship with Defendant.

60. Smith felt the calls were an invasion of his privacy and wanted Defendant to stop calling. Defendant ignored Smith's multiple requests and continued to call him.

61. Based on the circumstances of the calls (e.g. dead air, large volume of calls), Smith believed Defendant called his cellular telephone using an ATDS that mechanically selected her number from a computer database.

62. On information and belief, Defendant's ATDS called Smith on every occasion.

63. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

64. Smith is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 0089.

65. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

66. Smith did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

67. All calls Defendant made to Smith violate 47 U.S.C. § 227(b)(1).

## FACTS SPECIFIC TO PLAINTIFF BRANDY TAYLOR

68. Beginning around June 2015, Taylor began to receive calls from the various numbers from 214 and 469 area codes. These numbers are associated with Defendant. Since that time, Taylor has received at least 21 calls from Defendant, sometimes multiple calls in a single day.

69. Taylor received all calls described above on her cellular telephone assigned a number ending in 1855.

70. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1).

71. When Taylor answered the calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.

72. Defendant's representatives always asked for "Tyrone."

73. Taylor explained that she is not Tyrone and does not know Tyrone. Taylor demanded Defendant stop calling.

74. Yet, Defendant continued to call.

75. Taylor never provided Defendant consent to call her for any purpose.

76. Taylor felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Taylor's multiple requests and continued to call her.

77. Based on the circumstances of the calls (e.g. dead air, large volume of calls), Taylor believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

78. On information and belief, Defendant's ATDS called Taylor on every occasion.

79. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

80. Taylor is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 1855.

81. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

82. At a minimum calls Defendant made to Taylor after she told Defendant to stop calling violate 47 U.S.C. § 227(b)(1).

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

83. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

84. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

85. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

86. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### (KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

87. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

88. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

89. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

90. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in

the future.

## JURY DEMAND

91. Plaintiffs demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

1. For the first cause of action:

   - An award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227, *et seq*.;

   - Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent, placing calls to the wrong number, and placing calls to members of Defendant's IDNC;

   - Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

2. For the second cause of action:

   - Plaintiffs are entitled to and request $1,500.00 in statutory damages, for each and every violation , pursuant to 47 U.S.C. § 227, *et seq*.;

   - Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent,

- placing calls to the wrong number, and placing calls to members of Defendant's IDNC;

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

Dated: April 21, 2016                                        Respectfully Submitted,

**HUGHES ELLZEY, LLP**


_____/s/ W. Craft Hughes_____
W. Craft Hughes
Attorney-in-charge
Texas Bar No. 24046123
S.D. Tex. ID No. 566470
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
S.D. Tex. ID No. 37369
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

OF COUNSEL:

Bryant Fitts
Texas Bar No. 24040904
bfitts@fittslawfirm.com
**Fitts Law Firm, PLLC**
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Phone (713) 871-1670
Fax (713) 583-1492

**ATTORNEYS FOR PLAINTIFF**